Good morning, Your Honors. May it please the Court, Vivian Fu for Petitioner-Appellant Charles Hale, Jr. I'd like to reserve three minutes for rebuttal. Under California law, aiding and abetting a crime requires three elements. Knowledge of the unlawful purpose of the perpetrator, the intent or purpose of committing or encouraging or facilitating the crime, and three, some promotion or encouragement by act or advice. For attempted murder, an aider and abetter must share the perpetrator's intent to kill. Mere presence at the scene of the crime or failure to take steps to prevent a crime is not enough to sustain a conviction under California law. Well, just a minute. Is it mere presence and failure to take steps, or is it just mere presence? I mean, as I read the cases, it seems to me that it's mere presence is not enough. Yes. But if you, I mean, if you're taking active, if you will, steps in doing something to perpetrate the crime, then that is enough. Yes, that's true. In this case, we posit that Hale was only there and he did not take any steps to help Ricketts. And there's another thing that I guess I'm a little worried about in this case. We're really trying to second guess the state court, aren't we? Yes. I mean, in effect, this case is controlled by AEDPA, which says I have to give deference to the state court finding, right? Yes. And in this particular case, the state court applied the correct law, correct? Jacksonville, Virginia, yes. And so at that point, the only thing we're really looking at is if they have an unreasonable application of facts. Yes, that's exactly right. And with an unreasonable application of facts, we're really giving deference to them in their application thereof. Yes. So with regard to the three elements under California law, is it your position that the court of appeal was objectively unreasonable with regard to each of the elements or one in particular or? Well, in particular, the facilitation and action or encouragement. The third element. The third element. But also we would argue the second element. I mean, we argue all the elements, but which are argued in the brief, but in particular, the third element. You argued them all, but now you're going to number three. I'm focusing on the third one. All right. Fair enough. And really, our position is that this case is indistinguishable from Juan H.V. Allen, which this Court, actually Judge Gould's decision, also evaluated under the W. Do I have any do I have to give any deference to what Judge Gould said there? Well, yes, because he's reading the proceedings. He's here. He's here. I know. But I'm being very serious. I mean, we're interpreting Supreme Court precedent here. Do I have to give any deference to what he says in Juan? Well, this Court has said that Ninth Circuit precedent may be persuasive authority for the purposes of determining whether a particular State court decision is an unreasonable application of Supreme Court law. And this Court has said so, as recently as last week. We've said what? That Ninth Circuit precedent may be persuasive authority. Persuasive. Yes. But not binding. Is that what you're saying? That's correct. Okay. But based on, but given Juan H., I believe that that's persuasive authority that controls this case. Well, you believe. Counsel. Go ahead. Judge Gould, if I could interject a question. I do recall Juan H. pretty well. Of course, once we write an opinion, it doesn't belong to us. It can be argued by any lawyer or any judge to mean what it means. So I'm just speaking as one panel member now. And I'll just say that my concern about Juan H. and his persuasiveness here are really twofold. So let me tell you what they are, and then you can address that in your argument. First of all, after Juan H., the U.S. Supreme Court just keeps, you know, over and over again, hammering us, reversing when we give relief in an AEDPA case. And, you know, they reversed summarily in Nevada v. Smith yesterday. Or Nevada, something Nevada case. What? And that's not the only one. But in that Nevada case, they cautioned against relying on Ninth Circuit precedent. So I think, you know, we really would have to be sure that Jackson v. Virginia is against the state's position here. Second, there are a few differences with Juan H. There's a lot in common with it, but, you know, in Juan H., Juan and his brother are standing out in front of their trailer after it's been shot up, and there's not really an indication that Juan H. knew his brother had a gun. Whereas here, it's perhaps not clear, but it's at least possible that Hale knew that the shooter had a gun. And also, we've got a gang, a group of gang members driving into enemy gang territory, where one guy says, I'm going to make you riders, which tends to signal he's going to do something violent. Whereas in Juan H., I don't know that there was any evidence that the brother planned to do something violent or was going to do anything other than defensive. So there are possible distinctions there. And I would just say, if you put the fundamentals of Jackson, what is the best case to be sure that no rational jury could find beyond a reasonable doubt that those elements are met? I think this case is distinguished because the state court actually found, the state court made the specific finding that when Hale got into the car at the park with the others, that a jury could not reasonably conclude that he knew that Ricketts intended to commit murder. So we have to defer to that state court finding and start from there. But I appreciate that that's true, but that's what makes it a little hard to say they were really out to lunch in suggesting that this was fine, because they said, I mean, they were trying to be fair with your client, and they said just getting in the car isn't enough. But then they said, after getting in the car and knowing that he had a gun and knowing that he was going to make him a rider, that did do enough to make the sufficiency of the evidence what it needed to be. Well, I guess, with all due respect, Your Honor, the state court focuses on Hale's – once he got into the car. When he got into the car, he didn't know that Ricketts had the intent to kill. So he's in this moving car. I understand that. He's in this moving car, and the state court says because he didn't get out of the car or because he didn't say anything, which is basically a failure to take any action, which isn't enough. And based on that exclusive fact, that's what the state court is basing the facilitation and the encouragement on. Well, but just a minute. It isn't enough to just stand at the place. I agree with that. But here we're not standing at the place. And that's why Judge Gould's comments are of some concern. We're not standing at the place. We're at a different place. We're getting in a moving vehicle, not any problem then, but once in, knowing full well what's going to happen and knowing they've got to turn around and go back. And they've got to do what they've got to do. And they know they're going to make him a writer. Then he did nothing. Now, that seems to me to be an action, not just a sit. That's where I disagree. I mean, that's not an action. That's the failure to take an action. That is no different than standing there because he got into the car with no knowledge. Well, but it's enough to stand. But if, in fact, you're in a situation and you know something's going to happen but you've got to get there to make it happen and you don't do anything and they get there and you've done nothing about it, that seems to be aiding exactly what the state court is saying. By staying in the car, knowing he was going to make him a writer, his presence facilitated or acted. And by staying in the car, it showed a force by gang members in a rival gang's territory. And I'm supposed to say that's wrong, absolute, positive. Yes, Your Honor. I mean, with all due respect, you know, Hale was he was he got in the moving car. And I think it might have been different if when he got in, he knew that Ricketts had the intent to kill. But when he got in, he didn't know he didn't have any intent to kill. So he's in the car. He's just riding along. He's passive in the car. And the state court is basically saying, well, you should have gotten, you should have taken action by getting out of the car. You should have said something to Ricketts. But that's going beyond, that's basically saying you have to do more than just be merely present. I mean, he wasn't just merely present. And his action, there was nothing that he did that encouraged or helped Ricketts in the shooting. In fact, he dove to the floor. I mean, he was not even visible. I mean, he was on the ground with Janelle Johnson. So, Ms. Foon, let me ask you, when I was looking at this issue, there was a case that is pre-the ADIPA case or the law from 1997 by Judge Kaczynski that had the passenger in the car running over the car, ran over the victim, Mitchell versus Prunty. And I didn't see either side cite that case at all. Are you familiar with it? You know, I don't remember the details of that, Your Honor. All right. I'm sorry. Are you aware of whether or not the California court has cited it? I don't believe they cited it in this case. No, no, in other cases. Oh, in other cases. I'm not sure I can answer that. All right. I mean, the biggest problem, I guess, and why we keep going at you about this particular matter, is that it seems to me that ADIPA was enacted in order to give the state court a final say, unless they just absolutely missed the Supreme Court's precedent, which it isn't here, or I can't say there's any way that the way they looked at it could be a reasonable interpretation of the facts. And that's a tough standard. And, well, we've been in reverse 9-zip about five or six times, so says the local press, every time they report on this, when we try to undo these kind of state court determinations. So, again, it's a different case when you're standing at the scene and you don't do anything. It may be even a different case when your trailer's been shot at and all you're doing is standing behind your brother and you don't know what's going to go on. But in this case, we're not standing there. We've got to go to it. And we are not there, we're going to it, and we do nothing except keep going. I understand Your Honor's concern. Let me just address 1H. I think that in that case, motive evidence was even stronger in 1H, because the petitioner had gotten into a fight with the victims earlier. And he wasn't just standing in front of the trailer. He actually came out of hiding with his brother, and his brother had a gun. And so he came out of hiding with his brother, he followed his brother, and he stood behind the brother while the brother started shooting at the two people. So I think that there's even stronger evidence in 1H, in terms of where the jury could have inferred some sort of intent. And also, in this case, you know, with respect to the Supreme Court has said in Miller-Ell that deference doesn't apply to abandonment or abdication of a judicial review. And I understand the hill that we have to climb with respect to AEDPA. But this is one of the rare cases where he is passively in the car. And he didn't do anything. I mean, the car was moving because somebody else was driving. He wasn't running towards the shooting, or he wasn't taking any action to help the car get there. The car was just going, and he happened to be in it. And the fact that he didn't take any action to get out of the car, that shouldn't – that's just – Not to get out. Not to stop him. Not to say, why are you doing this? Let's go on. Not to say, please go on. Not to say, this is stupid. Why are you doing this? Nothing. Yes, but that's – but all of that in a regular standing there case, you don't need to do any of that. Counsel, did you want to save a minute? I did. Follow your 19 seconds. Yes, thank you. See, I can encourage Judge Smith to let you have a minute of rebuttal. Thank you. I'm glad to do that, Judge Gould. As I said, I hear you, I do it. You never used to say that when we were litigating cases together. No, no. And I should have done because you whip me every time. Go ahead, Counselor. Good morning, Your Honor. May it please the Court, I'm Kevin Viena. I'm a California Deputy Attorney General here for Respondent and Appellant in this matter. May I begin by thanking the Court for its indulgence to me and my opposing counsel. I have argument in that other courtroom, and my opposing counsel is trying hard to catch a plane. Anyway, thank you very much. It's kind of you to grant me that indulgence. One of the things I find curious as I approach this case is that the evidence that Mr. Hale himself shot from the car seems to be disregarded. And I think while that was not the prosecutor's, the focus of the prosecutor's argument, and it wasn't the strongest part of the State's brief, in the California Court of Appeal, it was present in both of those. And a faithful Jackson analysis, it seems to me, says that the jury can decide whether the evidence, excuse me, with regard to that second shooting was true or not, really resolves the case in terms of Jackson analysis. The jury could believe Mr. Salvador Chavez-Gonzalez. There was some corroborating evidence of the second shooting. That is, Mr. Hale has GSR on his person. He has, excuse me, the prosecutor in argument while going over the exhibits said that he counted eight bullet strikes. There were only six shell casings found from Mr. Ricketts' automatic firearm. So there is some evidence in support of Mr. Chavez's testimony that he saw Mr. Hale as the rear right seat passenger fire. Counsel, Judge Gould, if I could interject a question. I was wondering on the same lines, and I wasn't sure what all the evidence was. Normally, you know, you might imagine that if a group of gang members go cruising in a rival gang's territory, you know, aiming to get some payback for something, that they might be armed. And I didn't know what exactly is the evidence that Hale was armed and that he participated in the shooting. It is the testimony of a single witness, Mr. Salvador Chavez-Gonzalez. It's in the trial record at page 338 to about 361. That is direct evidence. There is some conflicting about who had the better view of the shooting, whether Mr. Chavez had, in fact, the better view, a better view than the other principal precipient witness, Cecilia, Cecilia, who was thrown to the ground as soon as the shooting started. She just thought there was a shooter in the front. But is the Chavez testimony itself, is that sufficient for a rational jury to conclude beyond a reasonable doubt that Hale was himself a shooter? Jackson tells us that the evidence should be viewed in the light most favorable towards the prosecution, that if there is conflicting evidence, that it is the jury's function to resolve those conflicts and draw rational inferences. So if the evidence is before the jury, Mr. Chavez was not equivocal in his statement to the police. He didn't testify that way at trial. He was no longer cooperative with the prosecution by the time he got to trial. But he told the police right after the boy had been shot that there were two shooters. He was in a perfect position to see it. A rational juror could conclude that that's true, I believe, Your Honor. Well, the trouble I had, I guess, with that line of evidence, Mr. Prosecutor, is that first of all, he says this is what he said. Then he won't say that that's what he said. And nobody else really agreed with that and whether that's enough to really make the jury beyond a reasonable doubt convict one. I think if we were sitting as jurors and that was the only evidence, that we individually might reach that conclusion. But could a rational juror conclude with the circumstantial evidence of the GSR, with the additional circumstantial evidence of Mr. Hill's furtive conduct afterwards, that is, participating in the plan to obstruct justice by fabricating an alibi with the movie tickets, if you combine that with his long-term gang association, recent admission as a full-fledged member of the gang just a month before, with the immediately preceding provocation where his two friends, Scott and Johnson, had been chased by members of their opposing gang in the context of what was an ongoing hot gang war, 20 killings in roughly the preceding year in this racially motivated war between the 1,200 block Crips and east side Rivas. In addition, we have circumstantial evidence that Mr. Hale is on board with this killing active war. Can I ask, what if that fact wasn't, there was no evidence whatsoever of the possibility of Mr. Hale having been the shooter? Would you see that a rational jury could have come to a determination that Mr. Hale aided and abetted or that the court of appeal determination was reasonable there? Yes, Your Honor, without question. And that was probably the bulk of the prosecutor's argument and closing argument and certainly the bulk of our argument in the state court, of the state's argument in the state court. I was going to say, it seems to me everybody's abandoned this argument you now are making, except you now, that all these other people are arguing something quite differently, and I was going to ask you how really you would distinguish one. Well, I would distinguish one largely by this. Ms. Foose says that the strength of the motive evidence was stronger in Juan. Absolutely not. The strength of the motive evidence is a good deal stronger in this case. We have the ongoing gang war. We have the immediately precipitating event where Scott and Johnson get chased and are humiliated by Mexicans in a truck. They pick up Hale and repair immediately to a 1,200-block gang known hangout, that park. They are at that park for at least a couple of hours while Mr. Ricketts, a senior, and as defense counsel called him in argument, shot caller for the 1,200-block crips, is there displaying his gun. And then the four of them get into a car and go directly to a neighborhood that is an East Side Rebus stronghold and are observed not proceeding down the street as if they're going somewhere else, but driving slowly down the street. So what exactly is it you're asserting Mr. Hale did to facilitate the attempted murder? His presence facilitates by providing strength, a show of strength by the gang, and by providing backup. He's bound as a gang member to provide backup to assist other gang members. And he provides an extra set of eyes and ears on this mission that Mr. Ricketts began when he got in the car. So how do I make that distinct from mere presence? I mean, it seems as if you're envisioning him taking some affirmative act that I don't see when he's seated in the back in terms of the third element of the crime. I believe that his presence is active support. His continued presence when they drive into the opposing gang's neighborhood is active support. And so is it incumbent on him then to get out of the car regardless of what? Well, actually what I would say is, and if I could return in part to a question asked by Judge Smith, that is why was this not more of the state's case or why was this not discussed? I think the answer to that question really is this. California applies what I see as a slightly more rigorous standard than Jackson. Jackson is simply, is there some evidence from which a rational juror could take it? California adds, it says, that the evidence must be credible, reasonable, and of solid value. And I think quite simply that the California court didn't want to, didn't feel the need to address that. So it is easier to address in terms of the motive evidence and the gang associations and the ongoing war with Mr. Ricketts' statement that I am going to make you riders. Okay. But you didn't really contrast with Juan. If I see Juan, here's a time when there was a shooting, yes, at his place. Yes, he didn't have to go to the place. But as I understood it, Juan and his brother ran away. Ran away from the shooting and people were looking for him and then they came back to the place with Juan behind his brother and his brother fires. Now, it seems to me that the coming back is similar to what happened here. He didn't have to come back. He could have run. He could have done a lot of things. But he was there with his brother, behind his brother as they came to the scene, and his brother charged to fire. So I guess I'm having a tough time again. Well, we lost Juan. I know. Yeah, we know you did. What we have in part also – You didn't lose for lack of trying. Maybe if your cert petition had worked, we'd have a different precedent here. Well, then perhaps we're still trying, but encouraged as you've noted by the United States Supreme Court about what a difficult standard this is for a petitioner to overcome in the federal courts. But we also have more information about Mr. Hale in this case. Mr. Hale, as an associate or as a recent gang member, was involved in provocations in opposing gang territory. That is graffiti that referred specifically to 187's murders and against Eastside Rivas gang members. So we know that he was predisposed to – not simply predisposed, but predisposed to assist in this very crime. And we know that he had been recognized by ESR because Detective Mira had found a yearbook in an ESR gang member's possession where there was a countervailing threat directly against JAP. That is Mr. Hale. And I can see how that goes to the intent element of the crime. How does that tie into the third element? Well, our argument is and remains that all three of those junior gang members, they were involved in making their mark in the gang. They were there to back up and assist the shot caller, Mr. Ricketts. And a rational juror could infer that. Counsel, on that point, what's the significance of the rider comment, I'm going to make you riders, to the issue of the show of force? Does it look more like a show of force after the senior gang member, the shooter guy, says I'm going to make you riders? And is there more of a show of force there than with Juan H. standing behind his brother? Well, Mr. Ricketts said that he wouldn't go into that neighborhood alone in his testimony. So we think the fact that there are four engaged in this mission indicates that all four, Scott is the driver, Johnson is a backseat passenger, and Hale is a backseat passenger, are there specifically for that purpose, to provide moral support. But that really doesn't address Judge Gould's comment. He says what is the make him a rider? How does that add to the significance? Thank you. And I apologize for missing that. Thanks for your correction, Your Honor. I mean, I described it to a colleague last night as sort of like confirmation in the Catholic religion. That is, he becomes a soldier. He becomes more solidly and a higher respected gang member by participating in, as Detective Meris said, by participating in, actively participating in, a violent act against a dangerous foe. Had you heard of this case I cited to your colleague, Mitchell v. Prunty, from the 90s? I recognize the case name, Your Honor. I don't recall it. We didn't brief it. No, it wasn't briefed. And I can't answer your question about whether it's been cited by California courts or not. Thank you. All right. Go ahead. Anything further, Counselor? No, Your Honor. Thank you. Let me cover my points if there are no other questions. Thank you very much. We'll give you a minute, ma'am. First, I want to address the theory that Hale was the second shooter. The State court did not consider this theory, and they specifically state that at ER 79, Note 10. And this Court has stated in Quaggi-Frank, 436 F. 3rd, 1057, and Van Lin v. Farman, 347 F. 735, that, quote, we cannot avoid granting the writ by positing an alternative reason for the State court's decision that is entirely distinct from the reason given by the State court, even if such different reason might have justified the State court's action. So because the State court only looked at whether there was sufficient evidence to support the theory that Hale aided and abetted, the review by this Court is limited to that theory in determining whether the State court decision was unreasonable. And that's also supported by Frans v. Hazy, where this Court states that we confine our 2254 D1 analysis to the State court's actual decisions analysis. And at any event, no juror could reasonably infer that there was a second shooter. Counsel mentions eight strike marks, but the State court specifically found six strike marks in its opinion, six bullet casings, all from a single gun. So Derek Scott and his jailhouse kite only wrote about Ricketts shooting. Cecilia Govia, one of the victims, testified that there was only one shooter. Jamel Johnson, who was in the car, said there was – Ricketts was the only person shooting. So the only evidence came from the single witness who refused to testify, whose view was obstructed by a gate and he was looking through in the evening. Okay. Thank you, Counselor. I think your time has expired. Thank you. Very well. Thank you very much for your argument, both of you. This is Case 11-5671H, Hale v. McDonald, and it is submitted. We will now move to Case –
judges: Gleason, Gould, Smith